UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JOSEPH BRADLEY LARSON,

                  Plaintiff,

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

                  Defendants.

_____/

Case No. 1:25-cv-792

Honorable Maarten Vermaat

## **OPINION**

This is a civil rights action brought by a former state prisoner under 42 U.S.C. § 1983. In a separate order, the Court granted Plaintiff leave to proceed *in forma pauperis* under 28 U.S.C. § 1915. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 6.)

This case is presently before the Court for preliminary review pursuant to 28 U.S.C. §§ 1915(e)(2). The Court may conduct this initial review prior to the service of the complaint. *See* 28 U.S.C. §§ 1915(e)(2) (stating that "the court shall dismiss the case at any time if the court determines that" the action "is frivolous malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief"). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros.,*

*Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, pursuant to 28 U.S.C. §§ 1915(e)(2), courts may review and even resolve a plaintiff's claims before service, which creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *Cf. Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that Defendants are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under pursuant to 28 U.S.C. §§ 1915(e)(2), in the same way Defendants are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they

had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Pursuant to 28 U.S.C. § 1915(e)(2), the Court may dismiss an action in which the plaintiff is proceeding *in forma pauperis* if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

## I.    Introduction

The events about which Plaintiff complains arose while Plaintiff was an MDOC parolee in the Kalamazoo Probation Enhancement Program (KPEP), in the KPEP facility located in Benton Harbor, Berrien County, Michigan (KPEP Benton Harbor). Plaintiff sues the following:  **MDOC**, **KPEP**, and the following KPEP officials and staff: Facility Director of KPEP Benton Harbor **Robyn Sherrick**, KPEP President and Chief Executive Officer **William DeBoer**, Staff Member

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

**Christa Norman**, Case Manager **Diana Fournier**, and **"John/Jane Doe(s) 1–10 KPEP Staff."**
(Compl., ECF No. 1, PageID.6–7.)

Plaintiff alleges that, upon his release from prison on March 5, 2025, Plaintiff was ordered to reside at KPEP Benton Harbor for transitional housing and community supervision. (*Id.*, PageID.8–9.) Plaintiff claims to have witnessed and experienced a number of incidents described in the following nine numbered Counts:

Count I: Retaliation in Violation of the First and Fourteenth Amendments (42 U.S.C. § 1983)

Count II: Systemic Discrimination and Failure to Accommodate Disabled Residents in Violation of the Americans with Disabilities Act and Rehabilitation Act (42 U.S.C. § 12132; 29 U.S.C. § 794)

Count III: Cruel and Unusual Punishment, Deliberate Indifference to Medical/Mental Health Needs, and Unconstitutional Conditions of Confinement in Violation of the Eighth and Fourteenth Amendments (42 U.S.C. § 1983)

Count IV: Equal Protection and Free Exercise Violations Under the First and Fourteenth Amendments (42 U.S.C. § 1983)

Count V: Violations of the Fifth and Fourteenth Amendments Due to Lack of Procedural Due Process and Selective Enforcement (42 U.S.C. § 1983)

Count VI: Forced Labor, Profiteering, and Systemic Abuse of Public Funds (U.S. Const. Amend. XIII; 42 U.S.C. § 1983)

Count VII: Arbitrary and Retaliatory Collective Punishment in Violation of the Fourteenth Amendment

Count VIII: Financial Exploitation of Parolees in Violation of Substantive Due Process (Fourteenth Amendment)

Count IX: Deliberate Indifference to Sexual Harassment, Sexual Assault, and Hostile Environment in Violation of the Eighth and Fourteenth Amendments

(Compl., ECF No. 1.)[2] Because Plaintiff's factual allegations largely appear within each Count, the Court will address them in that manner as well.

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

---

[2] Plaintiff specifically identifies the claims that he intends to bring in this suit. Therefore, the Court does not construe Plaintiff's complaint to raise any other claims.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Although *pro se* pleadings are liberally construed, *Haines v. Kerner*, 404 U.S. 519 (1972), conclusory and vague allegations will not support a cause of action. In assessing whether the complaint states a claim on which relief may be granted, the Court accepts only the complaint's "well-pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). Hyperbole and conclusory allegations "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

### A.    Claims Based on Harms to Others

Plaintiff's complaint largely concerns alleged constitutional violations that Plaintiff claims to have "witnessed" (*see, e.g.,* Compl., ECF No. 1, PageID.3, 24) occurring to other KPEP Benton Harbor residents. For example, in Count II, Plaintiff states that he witnessed the discrimination against or failure to accommodate other "individuals with known disabilities," which Plaintiff alleges violated the Americans with Disabilities Act (ADA) and Rehabilitation Act (RA). (*Id.*, PageID.20–23.) In Count III, Plaintiff states that he "witnessed . . . numerous conditions" that violated the Eighth's Amendment's prohibition against cruel and unusual punishment, including a refusal to allow restroom breaks during extended therapy sessions that caused another resident to urinate himself, the failure by "[s]taff" to act upon other residents' threats of self-harm, a lack of

6

railings or ladders on bunk beds, which caused other residents to struggle, a denial of mental health treatment for a mentally ill resident, a demand that "four residents" remain inside during "a facility fire incident," a staff member directing a resident to walk back from the hospital (though the resident was ultimately retrieved in a vehicle), indoor heat exposure, which was dangerous for "vulnerable residents," and other conditions generally described as dangerous but which are not alleged to have caused any actual harm to Plaintiff. (*Id.*, PageID.25–30.) As to Count IV, Plaintiff alleges that he "observed and documented multiple incidents of discriminatory treatment" to other residents but does not allege that he personally experienced any adverse actions alleged to have resulted from discrimination. (*Id.*, PageID.32–36). In Count V, Plaintiff describes "tickets" issued to "several others." (*Id.*, PageID.38–41.) And, in Count IX, Plaintiff describes sexual harassment of other KPEP Benton Harbor residents. (*Id.*, PageID.57.) To the extent that Plaintiff seeks to bring claims premised upon alleged violations affecting other residents, his claims will be dismissed.

To have standing to sue on a particular claim, a "plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks, footnote, and citations omitted). "In requiring a particular injury, the Court meant that the injury must affect the plaintiff in a personal and individual way." *Arizona Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 134 (2011) (internal quotation marks and citation omitted). Here, there is nothing in the complaint to suggest that these alleged violations affected Plaintiff personally in any way.

Moreover, Plaintiff lacks standing to assert the rights of others. *Newsom v. Norris,* 888 F.2d 371, 381 (6th Cir. 1989); *Raines v. Goedde*, 972 F.2d 348 (6th Cir. 1992). Federal law specifies that cases in the courts of the United States may be conducted only by the parties

personally or through counsel. 28 U.S.C. § 1654. That statute provides that, "in all courts of the United States, the parties may plead and conduct *their own cases* personally or by counsel, as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein." 28 U.S.C. § 1654 (emphasis added). The statute clearly makes no provision for a *pro se* party to represent others. The federal courts have long held that § 1654 preserves a party's right to proceed *pro se*, but only with respect to the party's own claims. *See Shepherd v. Wellman,* 313 F.3d 963, 970 (6th Cir. 2003) (holding that a *pro se* party may not prosecute a representative wrongful death action brought under Section 1983, where the beneficiaries thereof included persons other than himself). Only a licensed attorney may represent other persons. *See Rowland v. Calif. Men's Colony, Unit II Men's Advisory Council,* 506 U.S. 194, 201–03 (1993); *United States v. 9.19 Acres of Land,* 416 F.2d 1244, 1245 (6th Cir. 1969). Consequently, Plaintiff lacks standing to raise any claims based on actions by Defendants that may have affected other KPEP Benton Harbor residents.

Accordingly, because Plaintiff lacks standing to bring claims based upon harms to other KPEP Benton Harbor residents, the Court will dismiss these portions of Plaintiff's complaint for failure to state a claim.

### B.    Defendant MDOC

Plaintiff names the MDOC as a Defendant. However, § 1983 expressly requires that a named defendant be a "person." *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Courts have long held that the MDOC is not a "person" within the meaning of § 1983. *See Parker v. Mich. Dep't of Corr.*, 65 F. App'x 922, 923 (6th Cir. 2003) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989) and holding that the MDOC is not a "person" for purposes of § 1983). For this reason alone, Plaintiff's complaint fails to state a § 1983 claim for violation of the Eighth Amendment.

8

Additionally, states and their departments are immune under the Eleventh Amendment from suit in the federal courts unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and in numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

Accordingly, Plaintiff fails to state a claim upon which relief can be granted against Defendant MDOC.

### C.    Defendants DeBoer and "John/Jane Doe(s) 1–10 KPEP Staff"

In the caption of his complaint, Plaintiff lists as Defendants William DeBoer and "John/Jane Doe(s) 1–10 KPEP Staff." (Compl., ECF No. 1, PageID.1.) However, Plaintiff does not mention these particular named Defendants within the factual allegations of his complaint or otherwise identify any actions that may be attributed to them.

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where

9

a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)); *Rodriguez v. Jabe*, 904 F.2d 708 (6th Cir. 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries.").

While Plaintiff makes many of his allegations against KPEP Benton Harbor "staff," Plaintiff's reference to "staff" generally is insufficient to implicate any named Defendant. "Summary reference to a single, five-headed 'Defendants' [or officers or staff] does not support a reasonable inference that each Defendant is liable . . . ." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citation omitted). Thus, Plaintiff's claims against Defendants William DeBoer and "John/Jane Doe(s) 1–10 KPEP Staff" fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and are subject to dismissal. Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

Moreover, to the extent that Plaintiff seeks to hold Defendant DeBoer or any Defendant liable based upon a supervisory role, he may not do so under § 1983. It is well-settled that officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691; *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon

active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff has not included a single factual allegation against Defendant DeBoer or any numbered John or Jane Doe Defendant, let alone facts that would indicate that these Defendants were personally aware of the actions directed at Plaintiff and actively encouraged said actions so that it could be said that any one of these named Defendants caused a violation of Plaintiff's

constitutional rights. Accordingly, the Court will dismiss Plaintiff's complaint against DeBoer and "John/Jane Doe(s) 1–10 KPEP Staff."

### D.    Count I: First Amendment Retaliation Claims

In Count I of his complaint, Plaintiff brings claims for retaliation. (Compl., ECF No. 1, PageID.16.) Plaintiff alleges that, while at KPEP Benton Harbor, Plaintiff filed verbal and written complaints concerning the conditions of the facility. (*Id.*) He claims that, "[s]hortly after engaging in these protected acts," residents known to have harassed Plaintiff were reassigned to his room, Plaintiff was threatened with punishment for speaking up, he lost access to privileges, and he faced ridicule by "staff." (*Id.*, PageID.17–18.) Plaintiff alleges that he was denied "follow-up" when reporting sexual harassment, was confined to his room for 24 hours after attending the emergency room, received a false program rule violation charge, and had his therapy cancelled. (*Id.*) Plaintiff further describes that, "after alerting staff about misconduct," Plaintiff was "subjected to increased room searches, disciplinary tickets, loss of privileges, and targeted housing assignments." (*Id.*, PageID.12.) "In one instance," an unidentified staff member told Plaintiff to "stop snitching." (*Id.*, PageID.12.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

12

In describing his claim of "retaliation," Plaintiff alleges that, while at KPEP Benton Harbor, Plaintiff filed verbal and written complaints concerning the conditions of the facility. (Compl., ECF No. 1, PageID.16.) An inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018). Therefore, the Court will assume without deciding that Plaintiff engaged in protected activity for purposes of the first element of a retaliation claim.

Plaintiff goes on to describe several actions that he claims occurred "[s]hortly after engaging in these protected acts." (Compl., ECF No. 1, PageID.17–18.) However, Plaintiff does not identify any individual, let alone any named Defendant, responsible for the alleged acts of retaliation.

As with any § 1983 claim, "each [g]overnment official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 676. Thus, it remains Plaintiff's obligation to attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544. Plaintiff does not allege any facts that would plausibly suggest that any of the named Defendants were personally involved in the allegedly retaliatory acts described in Count I. And, as described above, Plaintiff's references to "staff" are insufficient to implicate any named Defendant. *See Boxill*, 935 F.3d at 518. Accordingly, the Court will dismiss Count I of Plaintiff's complaint.

### E.    Count II: Violations of the ADA and RA

In Count II, Plaintiff attempts to bring claims for violation of the ADA and RA but acknowledges that he is not personally disabled within the meaning of the ADA. (Compl., ECF No. 1, PageID.20.) This is fatal to Plaintiff's claims.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42

13

U.S.C. § 12132. Similarly, Section 504 of the RA protects any "otherwise qualified individual" from "be[ing] excluded from the participation in, be[ing] denied the benefits of, or be[ing] subjected to discrimination" under specified programs "solely by reason of her or his disability." 29 U.S.C. § 794(a). "Given the statutes' similar requirements, courts generally evaluate ADA and RA claims together." *Finley v. Huss*, 102 F.4th 789, 820 (6th Cir. 2024) (citation omitted).

To establish a prima facie case under either statute, whether for failure to accommodate a disability or for discrimination, the plaintiff must first show that he has a qualifying disability. *Id.*; *Mosby-Meachem v. Memphis Light, Gas & Water Div.*, 883 F.3d 595, 603 (6th Cir. 2018); *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 810 (6th Cir. 1999). Plaintiff admits that he is not disabled and, for that reason alone, his claims will be dismissed.

### F.      Counts III and IX: Eighth Amendment Claims

In Counts III and IX of the complaint, Plaintiff brings Eighth Amendment claims for cruel and unusual punishment, deliberate indifference to medical and mental health needs, unconstitutional conditions of confinement, and sexual harassment.

#### 1.      Cruel and Unusual Punishment/Unconstitutional Conditions of Confinement

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations

of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Consequently, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

For a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837.

With respect to the conditions of his 91-day stay at KPEP Benton Harbor, Plaintiff describes that he was subjected to a lack of leisure or recreation time, required to remain in uniform between the hours of 7:00 a.m. and 9:00 p.m., required to complete 60 hours of structured time, 10 hours of therapy, and 3-6 hours of kitchen labor daily, faced "early wake-up times and threats of discipline for noncompliance," and was confined to his room for 24 hours on one occasion.

(Compl., ECF No. 1, PageID.25–27.) He claims that the facility lacked air conditioning and that there was "[i]nconsistent access to hot water." (*Id.*, PageID.29.) Plaintiff further alleges that, on one occasion, Defendant Sherrick collectively punished residents for the acts of one resident by temporarily denying residents weekend telephone use, banning pooled food orders, removing a television, and limiting food sharing. (*Id.*, PageID.12, 14, 26.) These allegations fail to raise a constitutional issue.

Here, Plaintiff has not set forth facts that would plausibly suggest that any of the conditions described posed a substantial risk of serious harm to Plaintiff, let alone that any named Defendant was personally aware that the conditions posed a substantial risk of serious harm but nonetheless disregarded that risk. The Court does not discount that Plaintiff may have been disappointed that he could not place group food orders or watch unlimited television, that he was warm and did not have consistent hot water, or that he was required to wake up early, wear a uniform, or assist with facility's household tasks. However, the Constitution does not mandate comfortable conditions on parole. Plaintiff's allegations are far from the denial of life's minimal necessities needed to state an Eighth Amendment claim. Indeed, as it relates to Plaintiff's preference for leisure time, the Eighth Amendment does not entitle prisoners to unstructured relaxation time, but only sufficient exercise to maintain reasonably good physical and mental health. *See Walker v. Mintzes*, 771 F.2d 920, 927 (6th Cir. 1985). Plaintiff has not alleged that he lacked exercise or that he suffered any deterioration of his physical or mental health due to *too little* physical exertion.

With regard to Plaintiff's claims that, on one occasion, he was confined to his room for 24 hours, and that he temporarily lost his ability to use the telephone, the Court is guided by authorities related to the more onerous sanction of segregation. "Because placement in segregation is a routine discomfort that is a part of the penalty that criminal offenders pay for their offenses against society,

16

it is insufficient to support an Eighth Amendment Claim." *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th. Cir. 2008) (internal quotation marks omitted) (quoting *Murray v. Unknown Evert*, 84 F. App'x. 553, 556 (6th Cir. 2003).

Once again, logic dictates that any lesser sanction would likewise be insufficient. In *Alexander v. Vittitow*, 2017 WL 7050641 (6th Cir. Nov. 9, 2017), the Sixth Circuit Court of Appeals considered the lesser sanction of loss of privileges:

> To establish a violation of the Eighth Amendment based on alleged cruel and unusual punishment, the prisoner must demonstrate that he was deprived of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).
>
> Alexander's allegations fail to meet this standard. He alleges that he was "deprived of telephone use to call family, [a] yard, [an] email machine, call-outs, [and] exercise time" and that he was "locked in a cell for 23 hours a day," but he does not allege that he was denied any basic human needs. *Cf. Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011) (explaining that basic human needs for purposes of the Eighth Amendment "include food, clothing, shelter, medical treatment, and reasonable safety"). Temporary loss of privileges and confinement in segregation— without any allegations that basic human needs were not met—cannot establish an Eighth Amendment claim. *See, e.g., Bishawi v. Northeast Ohio Corr. Ctr.*, 628 F. App'x 339, 345–46 (6th Cir. 2014) (holding that "loss of certain privileges while in segregation [is] insufficient to support an Eighth Amendment claim" (citing *Farmer v. Brennan*, 511 U.S. 825, 835 (1994))).

*Alexander*, 2017 WL 7050641 at *5. Plaintiff, similarly, does not allege that he was denied any basic human needs.

In supporting his Eighth Amendment claim, Plaintiff relies upon hyperbole and conclusory allegations. However, conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79. Therefore, the Court will dismiss Plaintiff's Eighth Amendment claims to the extent premised upon unconstitutional conditions of conferment.

### 2.    Deliberate Indifference to Medical Needs

Plaintiff alleges that, while at KPEP Benton Harbor, he did not receive adequate medical care for his back pain, cracked molar, hemorrhoids, or migraines. (Compl., ECF No. 1, PageID.10, 26–27.) The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). A claim for the deprivation of adequate medical care under the Eighth Amendment has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips*, 534 F.3d at 539–40.

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence. . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

As discussed above, "each [g]overnment official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 676. Here, Plaintiff's complaint does not suggest that Plaintiff requested medical attention from any named Defendant, that any named Defendant was aware of any serious medical need, or that any named Defendant was otherwise involved in the provision of medical care to Plaintiff. Therefore, Plaintiff fails to state an Eighth Amendment claim against any named Defendant and the Court will dismiss Plaintiff's Eighth Amendment claims for inadequate medical care.

### 3. Sexual Harassment and Failure to Protect

In Count IX, Plaintiff brings Eighth Amendment claims related to alleged "sexual harassment." (Compl., ECF No. 1, PageID.55.) He points to conduct by Defendant Norman and by a fellow resident.

With respect to Plaintiff's claims against Defendant Norman, Plaintiff alleges that he attempted to use the resident telephone when Defendant Norman asked Plaintiff, "What are you going to do for me?" (*Id.*) Defendant Norman was satisfied with Plaintiff's offer to vacuum the TV room. (*Id.*, PageID.56.) On another occasion, Defendant Norman was handing out packages when she told Plaintiff, "Mr. Larson, you have the biggest package, that's why you get the bottom." (*Id.*)

"Federal courts have long held that sexual abuse is sufficiently serious to violate the Eighth Amendment[;] [t]his is true whether the sexual abuse is perpetrated by other inmates or by guards." *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1095 (6th Cir. 2019) (citations omitted); *Bishop v. Hackel*, 636 F.3d 757, 761 (6th Cir. 2011) (discussing inmate abuse); *Washington v. Hively*, 695 F.3d 641, 642 (7th Cir. 2012) (discussing abuse by guards). However, in the context of claims against prison officials, the Sixth Circuit has repeatedly held that the use of harassing or degrading language by a prison official, although unprofessional, does not necessarily rise to constitutional

19

dimensions. *See, e.g.*, *Ivey*, 832 F.2d at 954–55; *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (concluding that harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) (finding that verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim).

Moreover, the Sixth Circuit has held that "isolated, brief, and not severe" instances of sexual harassment, without more, do not give rise to Eighth Amendment violations. *Jackson v. Madery*, 158 F. App'x 656, 662 (6th Cir. 2005) (finding that harassing comments, even coupled with one minor instance of sexualized touching during a search, fall short of an Eighth Amendment violation), *abrogated in other part by Maben*, 887 F.3d 252; *Violett*, 76 F. App'x at 27 (an offer of sexual favors is not sufficient to state Eighth Amendment claim); *Johnson v. Ward,* 215 F.3d 1326 (6th Cir. 2000) ("Johnson's allegation that Ward made an offensive sexual remark to him does not rise to the level of a constitutional violation [as such is merely verbal abuse]."). Other courts have agreed. *See, e.g.*, *Davis v. Goord,* 320 F.3d 346, 353 (2d Cir. 2003); *Keenan v. Hall,* 83 F.3d 1083, 1092 (9th Cir. 1996); *Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir. 1986).

In contrast, the Sixth Circuit has held that ongoing, coercive verbal harassment may rise to sexual abuse that violates the Eighth Amendment. *Rafferty*, 915 F.3d at 1095. The *Rafferty* court found an Eighth Amendment violation when a prison official sexually harassed a prisoner by repeatedly demanding that the prisoner expose herself and masturbate while the official watched. The court noted that, considering the coercive dynamic of the relationship between prison staff and prisoners, such demands amount to sexual abuse. *Id.* at 1096.

*Rafferty*, however, is wholly distinguishable from Plaintiff's claim. Plaintiff does not allege that Defendant Norman ever coerced Plaintiff into engaging in sexual conduct. Instead, Plaintiff

claims only that Defendant Norman made, at best, two inappropriate comments to Plaintiff. But even sexual innuendo does not give rise to an Eighth Amendment violation. These two instances of inappropriate communication, while perhaps unprofessional, fall short of the objectively serious behavior barred by the Eighth Amendment.

Plaintiff also alleges that he was "sexually harassed by a fellow resident Bill Allen" and that he reported Mr. Allen's behavior and Defendant Norman's comments to Defendant Fournier, but no action was taken. (Compl., ECF No. 1, PageID.55–56.) The Court will construe these allegations as an Eighth Amendment claim against Defendant Fournier for failing to protect Plaintiff.

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer*, 511 U.S. at 833. Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). Like Plaintiff's other Eighth Amendment claims, to establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, a plaintiff must show that the official acted with "deliberate indifference" to a substantial risk of serious harm facing the plaintiff. *Id.* at 834; *Helling*, 509 U.S. at 32; *Bishop*, 636 F.3d at 766–67; *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street*, 102 F.3d at 814; *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 79 (6th Cir. 1995). Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Bishop*, 636 F.3d at 766–67.

Here, Plaintiff does not describe the actions of Mr. Allen, let alone provide the Court with any well-pleaded factual allegations that would plausibly suggest that Defendant Fournier was aware of a substantial risk of serious harm to Plaintiff. Plaintiff alleges in a conclusory fashion that he was being "sexually harassed" by Resident Allen and Defendant Norman. However, as described above in connection with Plaintiff's claims against Defendant Norman, Plaintiff's characterization of Resident Allen and Defendant Norman's behavior as "sexual harass[ment]" does not, alone, demonstrate a substantial risk of serious harm. Simply put, Plaintiff has not provided the Court with any *facts* to support his conclusory allegations. Therefore, the Court cannot find that Plaintiff has stated a claim against Defendant Fournier for deliberate indifference to a substantial risk of serious harm. Plaintiff's claims against Defendant Fournier in Count IX will be dismissed.

### G.    Count IV: Fourteenth Amendment Equal Protection Claims

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const. amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, Plaintiff must plead facts to show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

In Count IV of the complaint, Plaintiff alleges that he "personally observed and documented multiple incidents of discriminatory treatment." (Compl., ECF No. 1, PageID.32.) However, Plaintiff does not allege facts that would plausibly suggest that he personally experienced any harm as a result of discriminatory treatment. Indeed, Plaintiff discusses alleged discrimination based upon race and religion but does not even identify his own race or religious

affiliation. Accordingly, the Court will dismiss Plaintiff's equal protection claims for failure to state a claim.

### H.    Count IV: First Amendment Free Exercise Claims

In Count IV of his complaint, Plaintiff generally references what he describes as "[r]eligious discrimination" against "Muslim residents." (Compl., ECF No. 1, PageID.33–37.) He claims that, during Ramadan, Muslim residents were required to wait until 9:00 p.m. for their evening meal, and, on Christian holidays, Christan-affiliated churches were permitted to donate food containing pork without KPEP providing a non-pork protein alternative for the donated meal. (*Id.*, PageID.33–35.)

The First Amendment provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . ." U.S. Const. amend I. The right to freely exercise one's religion falls within the fundamental concept of liberty under the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). Accordingly, state legislatures and those acting on behalf of a state are "as incompetent as Congress" to interfere with the right. *Id.*

While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish that this right has been violated, Plaintiff must establish (1) that the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) that Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224–25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, 121 F.3d 707 (6th Cir. 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

23

First, Plaintiff's First Amendment free exercise claim is entirely conclusory. Plaintiff fails to allege the nature of his personal religious beliefs or to specify how Defendants' actions infringed on his ability to exercise those beliefs. As noted previously by the Court, conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under Section 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Therefore, Plaintiff's First Amendment free exercise claims are properly dismissed.

Second, Plaintiff fails to identify any named Defendant responsible for the alleged free exercise violations. This too requires the dismissal of Plaintiff's claims.

And third, even if the Court were to presume that Plaintiff identifies as Muslim, and even if Plaintiff had identified an appropriate named Defendant responsible for the actions described in Count IV, the actions described do not rise to the level of a First Amendment violation. Plaintiff does not allege that, in accepting donations of food containing pork from Christian groups, that Plaintiff was without access to a nutritionally suitable meal provided by the facility, or that Plaintiff could not have simply avoided the pork on those limited occasions.

As for evening Ramadan meals, Plaintiff alleges only that their service did not precisely align with the end of the fast. But that is not what the First Amendment requires. A practice will not be considered to infringe on a prisoner's free exercise of religion unless it "place[s] a substantial burden on the observation of a central religious belief or practice . . . ." *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989). "[T]he Supreme Court has made clear that the 'substantial burden' hurdle is high." *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007). "[A] 'substantial burden' is a difficult threshold to cross." *Id*. at 736. Such a burden "must place more than an inconvenience on religious exercise." *Id*. at 739 (quoting *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2014)). A particular

government action will not be considered a substantial burden merely because it "may make [the] religious exercise more expensive or difficult." *Id.* A burden is substantial where it forces an individual to choose between the tenets of his religion and foregoing governmental benefits or places "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Living Water*, 258 F. App'x at 733–34 (citations omitted). Mere inconvenience—including not having a meal served the moment the fast ends—is not a substantial burden, particularly where, as Plaintiff alleges, residents were permitted to purchase their own snacks at the facility.

Therefore, for each of the foregoing reasons the Court will dismiss Plaintiff's free exercise claims.

## I.    Count V: Fifth Amendment Claims

Plaintiff purports to bring claims for violation of his Fifth Amendment rights. However, nothing in Plaintiff's complaint suggests a Fifth Amendment violation. The Fifth Amendment's Due Process Clause applies only to claims against federal employees. Plaintiff has not named any federal employees in his complaint. Plaintiff, therefore, cannot maintain a Fifth Amendment due process claim. *See, e.g.*, *Scott v. Clay Cnty., Tenn.*, 205 F.3d 867, 873 n.8 (6th Cir. 2000) (noting that "[t]he Fourteenth Amendment's Due Process Clause restricts the activities of the states and their instrumentalities; whereas the Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government"). The Court will dismiss Plaintiff's Fifth Amendment claims for failure to state a claim.

## J.    Counts V and VII: Fourteenth Amendment Procedural Due Process Claims

In Count V, Plaintiff alleges that he was denied due process related to "punitive measures" imposed during his 91-day stay at KPEP Benton Harbor. (Compl., ECF No. 1, PageID.38.) He alleges that he was subjected to "[d]isciplinary sanctions" without notice, a hearing, an opportunity to present evidence, or an opportunity to call witnesses, including one 24-hour in-room

punishment. (*Id.*, PageID.39, 41.) He also claims that he was issued a "disciplinary ticket" for possessing ibuprofen in a non-facility-issued package where this violation was "typically overlooked." (*Id.*, PageID.40.)

In Count VII, Plaintiff claims that punishments were collectively applied despite knowledge of the resident-offender. These punishments include requiring residents to be in their rooms two hours early on weekdays and four hours early on weekends, canceling weekly outside food orders, suspending weekend phone privileges, banning eating in the day room, and banning ordering 2-liter sodas. (*Id.*, PageID.47–49.)

To prevail on a procedural due process claim, an inmate must first demonstrate that he was deprived of "life, liberty, or property" by government action. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). Nonetheless, Prisoners retain a liberty interest with respect to state-imposed prison discipline that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

The allegations of Plaintiff's complaint do not plausibly suggest that Plaintiff's disciplinary sanctions or the punishments applied collectively affected any interests that would fall into either of the categories identified in *Sandin* as protected by due process, i.e., an inevitable effect on the duration of Plaintiff's sentence or an atypical and significant hardship.

First, Plaintiff has not alleged that any of the disciplinary sanctions imposed affected the duration of his sentence. And second, Plaintiff has not alleged facts that would plausibly suggest that he suffered a "significant and atypical deprivation."

Plaintiff alleges that he was confined to his room for 24 hours on one occasion and that, on other occasions, lost various "privileges." However, the Constitution does not mandate days without curfews, 2-liter sodas, or takeout orders. In determining whether Plaintiff's allegations state a "significant and atypical deprivation" that may give rise to a protected interest requiring due process, the Court is again guided by precent concerning the most onerous sanction that a convicted prisoner may receive—placement in segregation. The Supreme Court has held that even placement in segregation within the prison "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey*, 524 F.3d at 794.

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph*, 410 F. App'x at 868 (61 days in segregation is not atypical and significant. Generally, only periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest); *Harden-Bey*, 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest).

27

Where stays of months in the most restrictive sanction of segregation are not considered an atypical or significant hardship, *see Joseph*, 410 F. App'x at 868, it defies logic to suggest that Plaintiff's sanction of 24-hours in his room and lesser penalties of lost privileges could be atypical or significant. Therefore, taking Plaintiff's factual allegations as true, Plaintiff cannot state a claim for violation of his Fourteenth Amendment right to procedural due process. The Court will dismiss any such claims.

### K.      Count VI: Thirteenth Amendment Forced Labor Claims

Plaintiff alleges that was "subjected to mandatory unpaid labor assignments," consisting of "3 to 6 hours of kitchen labor daily." (Compl., ECF No. 1, PageID.43.) He claims that this amounts to a violation of his rights under the Thirteenth Amendment.

The Court need not hypothesize about the purpose of or the value in requiring that KPEP parolees contribute to communal household chores. The Thirteenth Amendment states, in pertinent part, that "[n]either slavery nor involuntary servitude, except as punishment for a crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. Const. amend. XIII, § 1. As a convicted prisoner, the Thirteenth Amendment does not apply to Plaintiff. *See id.* Thus, "[t]here is no federally protected right of a state prisoner not to work while imprisoned after conviction. . . This is not the sort of involuntary servitude which violates Thirteenth Amendment rights." *Draper v. Rhay*, 315 F.2d 193, 197 (9th Cir. 1963), cert. denied, 375 U.S. 915 (1963). Therefore, the complaint does not support a Thirteenth Amendment claim.

### L.      Count VI: Claims Alleging Criminal Violations

In Count VI, Plaintiff generally alleges that KPEP violated various criminal laws. He alleges that KPEP returned out-of-state bottles to obtain Michigan bottle returns, falsely reported program hours, encouraged residents to inflate hours spent in programming, and avoided taxes.

(*Id.*, PageID.13, 14.) In addition to Plaintiff's failure to set forth facts identifying how these actions harmed Plaintiff personally, Plaintiff generally has no cause of action to sue for violations of criminal statutes. As the Sixth Circuit has explained:

> We do not casually, or for that matter routinely, imply private rights of action in favor of the victims of violations of criminal laws. *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994). Quite the opposite is true, as all of the following cases confirm. *See, e.g.*, *Stoneridge Inv. Partners, LLC v. Scientific–Atlanta, Inc.*, 552 U.S. 148, 165–66 (2008); *Central Bank of Denver*, 511 U.S. at 190–91; *Chrysler Corp. v. Brown*, 441 U.S. 281, 316 (1979); *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 20 (1979); *Cort v. Ash*, 422 U.S. 66, 80 (1975).

*Ohlendorf v. United Food & Commercial Workers Int'l Union, Local 876*, 883 F.3d 636, 642 (6th Cir. 2018); *see also Linda R.S. v. Richard D.,* 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."). Accordingly, Count VI will be dismissed for failure to state a claim.

### M.    Counts I, III, VIII, and IV: Fourteenth Amendment Substantive Due Process Claims

In Count VIII, Plaintiff brings a claim for violation of his right to substantive due process. (Compl., ECF No. 1, PageID.51). In Counts I, III, VIII, and IX, discussed above, Plaintiff also brings claims for violation of his Fourteenth Amendment rights.  Plaintiff does not specify the nature of his Fourteenth Amendment claims in Counts I, III, VIII, and IX; however, the Court will liberally construe these references as additional attempts to bring substantive due process claims.

"Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting

*Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

Here, Plaintiff's well-pleaded factual allegations, stripped of hyperbole, fall short of demonstrating the sort of egregious conduct that would support a substantive due process claim. Therefore, the Court will dismiss Plaintiff's Fourteenth Amendment substantive due process claims.

Moreover, Plaintiff's allegations in Counts I, III, and IX each fall directly under one of the other constitutional amendments discussed within the applicable count. "Where a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright*, 510 U.S. at 273–75 (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)). If such an amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013). In this context, Plaintiff § 1983 claims are governed by the specific constitutional amendments discussed in detail above. Therefore, the Court will dismiss additional Plaintiff's Fourteenth Amendment claims in Counts I, III, and IX for this reason as well.

## Conclusion

Having conducted the review required by 28 U.S.C. § 1915(e)(2)(B), the Court will dismiss Plaintiff's complaint for failure to state a claim.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge*

*v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

A judgment consistent with this opinion will be entered.


Dated:    September 19, 2025                    /s/ *Maarten Vermaat*
                                                Maarten Vermaat
                                                United States Magistrate Judge

31